FILED by _____ D.C.

ELECTRONIC

**Aug 15 2005**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.  04-14296-CIV-GRAHAM
Magistrate Judge Lynch

GLENN TUHEY,

      Plaintiff,

v.

ROBERT CROWDER, as Sheriff
of Martin County, Florida, JAMES
WARREN, JAMES SANDERS,
CARLO SCIANDRA, WILLIAM
WEISS, and ANTHONY BIASELLA,

      Defendants.

_____/

## DEFENDANT SHERIFF'S MOTION FOR SUMMARY
## JUDGMENT AS TO COUNT II OF PLAINTIFF'S COMPLAINT
## (AND MEMORANDUM OF LAW)

      The Defendant, ROBERT CROWDER, as Sheriff of Martin County, by and through undersigned

counsel, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure and Local Rule 7.5 for the United

States District Court, Southern District of Florida, files this his Motion for Summary Judgment as to Count

II of the Plaintiff's Complaint (and Memorandum of Law), and as grounds therefore would state as follows:

      The Plaintiff filed a four count Complaint in the Nineteenth Judicial Circuit, in and for Martin

County, Florida, which was removed by the Defendants to the United States District Court, Southern

District of Florida.  This motion pertains only to Count II of the Plaintiff's complaint which is as follows:

      Count II     42 U.S.C. Sec. 1983 Deprivation of Plaintiff's Civil Rights
                 against Robert Crowder, as Sheriff of Martin County, Florida.

Page 1 of  9

Based upon the record evidence, and the exhibits attached hereto, the undisputed facts establish that the Defendant Sheriff is entitled to summary judgment in his favor as a matter of law as to Count II of the Plaintiff's Complaint, for the following reasons:

> The Defendant Sheriff is entitled to summary judgment in Count II as there is no evidence to support a finding that the Defendant Sheriff in his official capacity had a custom, policy, practice, or procedure that <u>directly caused</u> the Plaintiff's constitutional rights to be violated by Deputies Warren, Sanders, Sciandra, Weiss and/or Biasella.

Consequently, even if there is a dispute in the material facts regarding the question of whether the Plaintiff's constitutional rights were actually violated, the Defendant Sheriff is still entitled to summary judgment as the Plaintiff cannot prove that the Sheriff's policies directly caused the alleged violation.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Defendant Sheriff's Motion for Summary Judgment as to Count II of the Plaintiff's Complaint.

FURTHER, and in support of this Motion, the Defendant Sheriff would refer this Honorable Court to the Memorandum of Law attached hereto and by reference made a part hereof.

## STATEMENT OF FACTS

The Plaintiff, Glenn Tuhey, was pursued and detained on October 26, 2003.  (<u>See</u> Plaintiff's Complaint.)  The Plaintiff alleges that his apprehension was unconstitutional as it was accomplished through the use of excessive deadly and non-deadly force.  (<u>See</u> Plaintiff's Complaint.)   For reasons as more fully set forth infra, the question of whether the Plaintiff's constitutional rights were actually violated by the Defendants Warren, Sanders, Sciandra, Weiss and/or Biasella is **not** relevant to the determination of the Defendant Sheriff's entitlement to summary judgment in Count II.  Consequently, for the purpose of this

motion only it can be presumed that the Plaintiff's rights were violated as any fact surrounding that question is immaterial to this motion.

Robert Crowder is the Sheriff of Martin County, Florida. He is named in his official capacity only. At the time of the alleged incident in 2003, the Sheriff had in existence certain official policies and procedures regarding the use of force, training, and certification of law enforcement officers under Florida law. These polices and procedures are on their face constitutional and would not directly cause any alleged constitutional violations through adherence thereto by deputies such as Warren, Sanders, Sciandra, Weiss and/or Biasella. (See Exhibit "A" - Affidavit of Major Robert B. Seaman and attached policies.)[1] Consequently, at this time the record evidence submitted to the Court by the Defendant demonstrates that the Sheriff's policies did not directly cause the Plaintiff's constitutional rights to be violated as alleged in the Plaintiff's Complaint. Therefore, even if the Plaintiff's constitutional rights were violated at the hands of individual deputies, contrary to the Sheriff's policies, the Sheriff is still entitled to summary judgment in Count II.

## MEMORANDUM OF LAW

### ARGUMENT

The standard of review which must be applied by the Court as contained in Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[1] See Tennessee v. Garner, 471 U.S. 1, 105 S.Ct 1694, 85 L.Ed.2d 1 (1985); Graham v. Conner et al., 490 U.S. 386, 109 S.Ct 1865, 104 L.Ed.2d 443 (1989).

Page 3 of 9

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the court held that summary judgment should be entered against:

> [A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is entitled to judgment as a matter of law because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  (citations and internal quotes omitted.)

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party, in this case, the Plaintiff.  The Plaintiff is then required to come forward with sufficient evidence to rebut the showing with affidavits or other relevant and admissible evidence.  See <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir.), <u>cert.</u> <u>denied</u>, 112 S.Ct. 913 (1992).  It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict.  See <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 (11th Cir. 1990) <u>see</u> <u>also</u> <u>Matsushita Electronic Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) [Plaintiff must produce specific facts showing that there is a genuine issue for trial.].  The Defendant here has met his burden by producing the official policies of the Defendant that do not authorize or cause constitutional violations to occur.  (<u>See</u> Exhibit "A").  The Plaintiff cannot meet his burden-- that this Defendant had a custom, policy, practice, or procedure <u>in place on</u> <u>October 26, 2003</u> that could be found by a jury to have <u>directly caused the Plaintiff's rights to be violated</u> <u>as alleged on **that date.**</u>

Page 4 of  9

## COUNT II - 42 U.S.C. 1983 OFFICIAL CAPACITY CLAIM

It is clear from the Plaintiff's Complaint that the Defendant Sheriff is being sued in his official capacity only. Consequently, it is well settled that the Sheriff, as a government entity, is not liable for the actions of his subordinates or employees in a cause of action brought pursuant to 42 U.S.C. § 1983 by operation of the concept of respondeat superior/vicarious liability. Consequently, there must be evidence of a custom, policy, practice, or procedure that provided the moving force behind, and the direct cause of, the alleged constitutional violation. There must be evidence of an affirmative link between the alleged violation and the alleged policy or custom. The Plaintiff must establish a direct causal connection between a custom or policy, once shown to exist in fact, and the alleged constitutional violation. See Monell v. Dept. of Social Services, 436 U.S. 658 (1978) and Fundiller v. City of Cooper City, 777 F.2d 1436 (11th Cir. 1985).

It is important to understand the distinction between a custom, practice or procedure and an official policy. In the case of a formal, official policy that authorizes unconstitutional behavior, a single incident of the unconstitutional behavior by a subordinate of the official policy-making authority is sufficient to bring a Section 1983 cause of action. See e.g. Monell, supra. However, the law is more stringent in its requirement of proof in the typical Section 1983 case where the custom, practice, or procedure is not an official promulgated policy and rather is based upon some other theory that is not directly related to the actual unconstitutional act. Generally, in a case where the "policy of the governmental entity" is argued to exist through such an informal custom or practice, a single or isolated incident of a constitutional violation

by an employee is insufficient to establish such an informal custom or practice.  See City of Oklahoma v. Tuttle, 471 U.S. 808 (1985).

It is undisputed that the Defendant Sheriff Crowder does not have a policy as the final policy-maker for the Martin County Sheriff's Office that would authorize or cause deputies to use excessive or unreasonable force.  (See Exhibit "A" - Affidavit of Major Robert B. Seaman and attached policies of the Martin County Sheriff's Department, bearing Sheriff's Crowder's signature).

In Board of County Comm'rs of Bryan County, Oklahoma v. Jill Brown, 520 U.S. 397, 117 S.Ct. 1382, 1388-89 (1997), the United States Supreme Court indicated:

> As our §1983 municipal liability jurisprudence illustrates, however, it is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the depravation of federal rights.

> Where a plaintiff claims that a particular municipal action itself violates federal law or directs an employee to do so, resolving these issues of fault and causation is straight-forward.  Section 1983 itself contains no state-of-mind requirement independent of that necessary to state a violation of the underlying right.  In any §1983 suit, however, the plaintiff must establish the state-of-mind of the underlying violation.  Accordingly, proof that a municipality's legislative body or authorized decision-maker has intentionally deprived the plaintiff of a federally protected right necessarily establishes that the municipality acted culpably.  Similarly, the conclusion that the action taken or directed by the municipality or its authorized decision-maker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains....

> Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to insure that the municipality is not held liable solely for the actions of its employee....

> Claims not involving an allegation that the municipal action itself violated the law, or directed or authorized the depravation of federal rights, present much more difficult

problems of proof.  That a plaintiff has suffered a depravation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably....

Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.  As we recognized in <u>Monell</u> and have repeatedly reaffirmed, Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a  depravation of federal rights.

(internal quotes and citations to other cases omitted.)

It is undisputed that the Sheriff as final policy-maker has not promulgated an official policy that would authorize or cause the constitutional misconduct as alleged.  To establish the existence of a custom or practice, it is generally necessary to show a persistent and wide-spread practice of the alleged unconstitutional behavior that is argued to amount to the practice or custom of the governmental entity.  Moreover, knowledge of such customs must be attributable to the Sheriff in his official capacity as a policy level-making official.  Normally, random acts or isolated incidents are insufficient to establish a custom or practice.  <u>See</u> <u>Depew v. City of St. Mary</u>, 787 F.2d 1496, 1499 (11th Cir. 1986); <u>see</u> <u>also</u> <u>Brook v. Scheib</u>, 813 F.2d 1191 (11th Cir. 1987); <u>Brown v. City of Fort Lauderdale</u>, 923 F.2d 1474 (11th Cir. 1991).

The Defendant Sheriff has brought forth evidence by way of attached Exhibit "A".  The evidence demonstrates that the Plaintiff's constitutional rights were not violated as a direct result of this Defendant's policies.  The undisputed facts presented by this Defendant demonstrate that there is no policy that caused the Plaintiff's constitutional rights to be violated.  Consequently, the Plaintiff must provide competent proof of the existence of an unofficial custom or practice and, cannot rely on his mere allegation of the existence of such a custom or policy.  If the Plaintiff is successful in doing so, he must also demonstrate that the

unofficial custom or practice actually caused the Plaintiff's constitutional rights to be violated on October 26, 2003 as alleged.  The Plaintiff will not be able to do so.

The Defendant Sheriff is entitled to summary judgment on Count II of the Plaintiff's Complaint brought pursuant to 42 U.S.C. § 1983 where the Plaintiff cannot carry his burden that this Defendant directly caused his constitutional rights to be violated by the co-Defendants Warren, Sanders, Sciandra, Weiss and/or Biasella, on October 26, 2003 as alleged.

**ANY DISPUTE IN THE MATERIAL FACTS REGARDING
THE PLAINTIFF'S ALLEGATIONS THAT HIS CONSTITUTIONAL
RIGHTS WERE ACTUALLY VIOLATED IS IMMATERIAL**

Where the doctrine of respondeat superior is not applicable in a cause of action brought against the Defendant Crowder as Sheriff pursuant to Title 42 U.S.C. § 1983, the absence of evidence of the existence of a custom, policy, practice, or procedure attributable to the Defendant Crowder as the governmental entity which actually caused a violation of the Plaintiff's constitutional rights entitles this Defendant to summary judgment even if there is a determination that the Plaintiff's constitutional rights were, in fact, violated by the co-Defendants Warren, Sanders, Sciandra, Weiss and/or Biasella.  In such a situation, any dispute in the facts regarding whether the Plaintiff's constitutional rights were actually violated by the co-Defendant deputies becomes immaterial to the resolution of this Motion for Summary Judgment based upon the Plaintiff's inability to prove the existence of a causational custom, policy, practice, or procedure of the Sheriff as the Plaintiff also carries the burden of proof regarding this element of his Section 1983 claim against the Defendant Sheriff.  See Celotex, supra.

The Motion should be granted.

Page 8 of  9

I HEREBY CERTIFY that on this ___15th___ day of August, I electronically filed a copy of the foregoing Motion with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and correct copy of the foregoing has been sent via facsimile to: **RICHARD K. SLINKMAN, ESQ.**, *Attorney for Plaintiff*, Slinkman & Slinkman, P.A., The Horizons Building, 1401 Forum Way, Suite 201, West Palm Beach, FL 33401; and **KENNETH M. GORDON, ESQ.**, *Attorney for Plaintiff*, Adams, Coogler, Watson, Merkel, Barry & Kellner, P.A., 1555 Palm Beach Lakes Blvd., Suite 1600, West Palm Beach, FL  33401.

PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
Attorneys for Defendant SHERIFF
2455 E. Sunrise Blvd., Ste. 1216
Fort Lauderdale, FL  33304
Telephone:     (954) 462-3200
Facsimile:      (954) 462-3861


By:  s/Richard A. Giuffreda
       RICHARD A. GIUFFREDA
       FBN: 705233

Page 9 of  9

# EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.  04-14296-CIV-GRAHAM
Magistrate Judge Lynch

GLENN TUHEY,

      Plaintiff,

v.

ROBERT CROWDER, as Sheriff
of Martin County, Florida, JAMES
WARREN, JAMES SANDERS,
CARLO SCIANDRA, WILLIAM
WEISS, and ANTHONY BIASELLA,

      Defendants.

_____/

## AFFIDAVIT OF MAJOR ROBERT B. SEAMAN

STATE OF FLORIDA    )
                     :SS
COUNTY OF MARTIN   )

    **BEFORE ME** this day personally appeared ROBERT B. SEAMAN who, upon oath, deposes and states as follows:

    1.    I am a deputy sheriff with the Martin County Sheriff's Office ("M.C.S.O."), who holds the rank of Major.  I am assigned to the Administration department of the M.C.S.O.  As such my duties include the supervision of the development and implementation of written policy and procedure, training, discipline and hiring practices.

    2.    I have been employed by the Sheriff since March 5, 1984.

3.      Attached to this Affidavit is an authentic copy of the Sheriff's policies governing the use of deadly force and non-deadly force, said policies consisting of ten pages which govern the conduct of all deputy sheriffs, including Deputies Warren, Sanders, Sciandra, Weiss, and Biasella. See Exhibit 1.

4.      The Martin County Sheriff's Office policies and procedures attached hereto meet all of the requirements of the Commission on Accreditation for Law Enforcement Agencies ("CALEA"). As a result, the Martin County Sheriff's Office is CALEA certified, and has been CALEA certified since 1995 through the present. In addition, the Martin County Sheriff's Office policies and procedures comply with the Commission for Florida Law Enforcement Accreditation ("CFA") certification requirements. As such, the Martin County Sheriff's Office has been certified by CFA since 1998 through the present.

5.      The attached policies and procedures of the Martin County Sheriff's Office were applicable in the year 2003, and specifically applied to the conduct of Deputies Warren, Sanders, Sciandra, Weiss, and Biasella, during the pursuit, apprehension and arrest of Glenn Tuhey on October 26, 2003. There is no authorized deviation from these policies and procedures which is or would be tolerated by the Sheriff of Martin County.

6.      Deputies Warren, Sanders, Sciandra, Weiss, and Biasella were all sworn certified law enforcement officers in compliance with Florida law at the time of Mr. Tuhey's arrest on October 26, 2003. As such, these deputies met all of the state standards applicable to law enforcement officers including, but not limited to, specific training regarding the law and policy governing use of deadly and non-deadly force. Florida law only requires forty (40) hours of in-service training every four years in order to maintain state certification as a law enforcement officer. (Ch. 943 Fla.

Statutes). The M.C.S.O. provides approximately forty (40) hours of in-service training every single year on a variety of subjects including but not limited to the use deadly force and non-deadly force.

**FURTHER AFFIANT SAYETH NAUGHT.**

MAJOR ROBERT B. SEAMAN

STATE OF FLORIDA         )
                        : SS
COUNTY OF MARTIN         )

BEFORE ME, the undersigned authority, this day personally appeared MAJOR ROBERT B. SEAMAN who, upon oath, acknowledges and says that he has read the foregoing Affidavit, and the attached official policies of the Martin County Sheriff's Office and has stated that said is true and correct based upon first hand personal knowledge and he is either personally known to me or has produced _____ as identification.

WITNESS my hand and seal this 15th day of August, 2005.

NOTARY PUBLIC

My Commission Expires: August 06, 2007

Laurie J. Weber
My Commission DD298336
Expires August 06, 2007

Page 3 of 3



| DATE | REVISED | NUMBER | PAGE NUMBER |
|---|---|---|---|
| 01-27-00 | 01-27-00 | 103.00 | 1 OF 4 |

| MANUAL | SECTION |
|---|---|
| PROCEDURE | POLICY STATEMENT |

| RELATED CALEA STANDARDS | AMENDS / SUPERSEDES |
|---|---|
| 1.2.2, 1.3.1-3, 1.3.6, 1.3.11, 1.3.12,16.3.6, 41.2.2, 46.1.4 | SUPERSEDES SECTIONS 1.3.4, 1.3.5,1.3.7, 1.3.9, 1.3.13 DATED 06-01-93 |

| SUBJECT: USE OF DEADLY FORCE |
|---|

**I.   PURPOSE:**   The purpose of this policy is to establish guidelines for the use of deadly force for the Martin County Sheriff's Office.

**II.  SCOPE:**   This policy shall apply to all Sheriff's deputies involved in the application of deadly force including, but not limited to, the use of firearms.

**III. DISCUSSION:**   The value of human life is immeasurable in our society.  In order to be consistent with that belief, the use of deadly force must be limited to situations involving the protection of human life.  The apprehension of criminals and the protection of property must be subordinate to the protection of life.

The authority to use deadly force is the most critical responsibility that will ever be placed on a Deputy Sheriff, or other law enforcement officer.  The consequences of a decision to use deadly force are irreversible after the fact...it is a final decision...similarly, a decision not to use deadly force can also mean finality.  A hesitation or conscious decision on the part of the deputy sheriff could very well result in the death of the deputy or another person the deputy is sworn to protect.

**IV.  DEFINITIONS:**

    A.   **DEADLY FORCE** - Force which is likely to cause death or great bodily harm.



EXHIBIT

1

**OFFICE OF THE SHERIFF**          **#103.00**
**MARTIN COUNTY, FLORIDA**         **2 of 4**

B.  **PROBABLE CAUSE** - A reasonable suspicion supported by circumstances sufficiently strong in themselves to warrant a reasonable man in believing a threat is real.

C.  **REASONABLE BELIEF** - The facts or circumstances the deputy knows, or should know, are such as to cause an ordinary and prudent person to act or think in a similar way under similar circumstances.

D.  **GREAT BODILY HARM** - A condition which creates a substantial risk of death or serious personal injury or disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

E.  **IMMEDIATE THREAT** - Is without an interval of time an intention to inflict death, and/or great bodily harm.

V.  **POLICY:**

A.  **Sheriff's deputies are authorized to use only such force as necessary, including deadly force, when there is reasonable belief that such force is necessary to:**

1.  Prevent **imminent** death or great bodily harm to the deputy;

2.  Prevent **imminent** death or great bodily harm to another individual;

3.  Apprehend the perpetrator of a felony which involves the use or threatened use of deadly force and/or the individual who is sought poses an **immediate** threat to the life and/or safety of the deputy or another individual(s), and/or there is a substantial risk that the person whose arrest is sought will cause death or great bodily harm to another if the apprehension is delayed.

4.  This policy governing the use of deadly force shall apply with equal effect to juveniles.

B.  **Sheriff's deputies will not shoot from or at a moving vehicle except under the following circumstances:**

1.  When an occupant of the vehicle is utilizing deadly force against a deputy sheriff or other person;

**OFFICE OF THE SHERIFF**                    **#103.00**
**MARTIN COUNTY, FLORIDA**                   **3 of 4**

    2.   To prevent death or serious bodily harm to the
         deputy or another person;

    3.   To apprehend a felon who has just committed a
         felony resulting in death or great bodily harm.

C.   **Sheriff's deputies are authorized to use deadly force
     against an animal under the following circumstances:**

    1.   For self-defense of the deputy or the protection
         of another;

    2.   When the animal is so badly injured that humanity
         requires its relief from further suffering;

    3.   When the animal is seriously wounded or injured and
         all attempts for assistance from the owner and/or
         Animal Control have been made.

D.   **Sheriff's deputies are prohibited from using deadly
     force under the following circumstances:**

    1.   Against an unarmed, non-dangerous fleeing felon.

    2.   To effect the arrest or prevent the escape of any
         person charged with, or convicted of, a
         misdemeanor or traffic offense.

E.   **A deputy is prohibited from firing a warning shot.**

F.   **A deputy is prohibited from discharging a firearm or
     otherwise using deadly force when the circumstances do
     not provide a high probability of striking the intended
     target, or when there is a substantial risk to the safety
     of an innocent bystander.**

V.   **Reporting Use of Deadly Force/Discharging of Firearms:**
     Whenever a deputy discharges a firearm, other than for
     training or recreation, or discharges a firearm or uses any
     type of deadly force that results in the injury or death of
     another, the deputy shall immediately notify a supervisor and
     shall complete a written report on the incident which shall be
     submitted prior to leaving tour of duty. If the incident
     occurs off-duty the deputy shall be considered on-duty until
     the report is completed.

| OFFICE OF THE SHERIFF | #103.00 |
|---|---|
| MARTIN COUNTY, FLORIDA | 4 of 4 |

**VI.  Mandatory Instruction and Training in Use of Force:**

A.  All new employees will be given training in, and an individual copy of, the Office's use of force policies before being authorized to carry a firearm.

B.  At least annually, during a weapons training class, directives pertaining to use of force and/or weapons shall be reviewed for training purposes.

C.  All deputies shall be instructed in new or revised directives pertaining to use of force and/or weapons, upon being issued, through roll-call training, in-service training classes, or weapons training classes.

**VII. SUMMARY:**  In addition to serving the best interests of the public, the Office's deadly force policy is of vital personal interest to the Deputy. In no way does the policy reduce a Deputy's latitude in self defense.  The Sheriff's Office policy justifies the use of deadly force by Martin County Sheriff's Deputies in situations of strong and compelling need to protect life.  Confronted with a split second decision to fire at a fleeing felony suspect, the Deputy should ask him/herself **"Am I justified in killing ?"** If there is any doubt, **DON'T SHOOT**.

Drafted By : mld # 22

Date: 02-24-93

**Sheriff Robert L. Crowder**



| DATE | REVISED | NUMBER | PAGE NUMBER |
|------|---------|--------|-------------|
| 11-22-02 | 11-22-02 | 104.00 | 1 OF 6 |
| MANUAL | | SECTION | |
| PROCEDURE | | POLICY STATEMENTS | |

| RELATED CALEA STANDARDS | AMENDS / SUPERSEDES |
|-------------------------|---------------------|
| 1.2.2, 1.3.1,1.3.4, 1.3.6, 1.3.7,1.3.11,12.2.1 | 1.3.13 DATED 06-01-93 |

| SUBJECT: USE OF NON-DEADLY FORCE |
|----------------------------------|

I. **PURPOSE:** The purpose of this policy is to establish guidelines for the use of non-deadly force, either physical force or by using non-lethal weapons, by deputies performing law enforcement functions.

II. **SCOPE:** This policy shall apply to all Sheriff's deputies involved in the use of non-deadly force for purposes of overcoming resistance to arrest, defense against physical assault or to perform official duties. This policy shall supplement but not supersede procedures for use of deadly force.

III. **DISCUSSION:** The value of human life is immeasurable in our society. In order to be consistent with that purpose, the use of non-deadly force must be limited to situations involving resistance to arrest, defense against physical assault or force necessary to perform official duties.

IV. **DEFINITIONS:**

    A. **DEADLY FORCE** - Force which is likely to cause death or great bodily harm.

    B. **NON-DEADLY FORCE** - Force which is not likely to cause death or great bodily harm.

    C. **NON-LETHAL WEAPONS** - Impact weapons, approved by the Sheriff's Office, that when used consistent with training procedures should not cause death or great bodily harm.

    D. **PHYSICAL FORCE** - That force necessary to control a person's action by means of bodily strength and/or non-lethal weapons.

| OFFICE OF THE SHERIFF | #104.00 |
|---|---|
| MARTIN COUNTY, FLORIDA | PAGE 2 OF 6 |

**V.  POLICY:**

    **A.  All force used by a Martin County Sheriff's Deputy, whether it is non-deadly or deadly, will be only that force necessary to effect lawful objectives.**

    B.  A deputy may use non-deadly force to the extent necessary to overcome resistance, effect an arrest, or protect himself or others from physical harm.

**VI.  LEVELS OF RESISTANCE MATRIX:**

The Resistance Matrix is meant to be used as a guideline for a deputy to select effective reasonable and legal force options in a verbal or physical encounter.  As a subject increases his/her resistance level from verbal to physical, a deputy may have to increase the level of his/her response until the resistance ceases and the deputy is able to gain control of the subject. As soon as the point of subject compliance is reached, the deputy must de-escalate his/her response level to the minimum force necessary to control the subject.

The resistance matrix is divided into six (6) levels. Levels one through five (1 - 5) address non-deadly force. Level six (6) addresses deadly force.

    A.  **Level I:  Presence** - a subject is on the scene, in attendance of suspicious activity.

    B.  **Level II: Verbal Resistance** - A subject may verbally refuse to comply with a deputy's requests or attempts to control the situation. The subject may threaten the deputy with further resistance, or, the subject may not respond to the deputy.

    C.  **Level III: Passive Physical Resistance** - a subject physically refuses to comply or respond. He/she does not make any physical attempts to physically defeat the actions of the deputy, but forces the deputy to employ physical maneuvers to establish control.

    D.  **Level IV: Active Physical Resistance:** A subject makes physically evasive movements to defeat a deputy's attempt at control. This may be in the form of bracing or tensing, attempts to push/pull away or not allowing the

| OFFICE OF THE SHERIFF | #104.00 |
|---|---|
| MARTIN COUNTY, FLORIDA | PAGE 3 OF 6 |

deputy to get close to him/her.

E.   **Level V: Aggressive Physical Resistance** - A subject makes overt, hostile, attacking movements which may cause injury, but are not likely to cause death or great bodily harm to the deputy or others.

F.   **Level VI: Aggravated Physical Resistance:** A subject makes overt, hostile, attacking movements with or without a weapon with the intent and apparent ability to cause death or great bodily harm to the deputy or others.

## RESISTANCE MATRIX

| LEVEL OF RESISTANCE | LEVEL OF CONTROL |
|---|---|
| PRESENCE | DEPUTY PRESENCE<br>LEVEL I |
| RESISTANCE | *VERBAL COMMANDS<br>LEVEL II |
| PASSIVE PHYSICAL RESISTANCE | EMPTY HAND CONTROL<br>USE OF OLEORESIN CAPSICUM (OC)<br>LEVEL III |
| ACTIVE PHYSICAL RESISTANCE | EMPTY HAND CONTROL<br>IMPACT WEAPON<br>LEVEL IV |
| AGGRESSIVE PHYSICAL RESISTANCE | INTERMEDIATE WEAPONS<br>HARD STRIKING TECHNIQUES<br>LEVEL V |
| AGGRAVATED PHYSICAL RESISTANCE | DEADLY FORCE<br>LEVEL VI |

* Accompanies All Levels Of Force

| OFFICE OF THE SHERIFF | #104.00 |
|---|---|
| MARTIN COUNTY, FLORIDA | PAGE 4 OF 6 |

## VII. OFFICER RESPONSE TO LEVELS OF RESISTANCE

A. **Level I** - Deputy Presence

    1. **Arrival:** The Deputy is on the scene, in attendance. This includes proper voice and/or other identification, body language and awareness by the subject that he/she is addressing a Deputy.

    2. **Interview Stance:** The deputy adopts a stance outside of his/her danger zone that provides appropriate protection and forms the basis of an effective physical response if attacked. In such a stance, the firearm or strong side leg is back; the non-firearm or weak side leg is forward; the feet are about shoulder width apart; knees slightly bent, giving balance, control and a lower body center of gravity; equally distributed body weight; and the hands are up for guarding the upper body.

B. **Level II** - Communication

    1. **Dialogue:** A two way, controlled, non-emotional communication between the deputy and the subject, focused on problem identification and resolution.

    **2. Verbal Direction:** A deputy tells or commands a subject to engage in or refrain from, a specific action or non-action.

    3. **Touch:** A deputy employs a soft assisting touch to comfort, console or to obtain the attention of a subject or citizen in a non-confrontational situation.

C. **Level III** - Physical Control

    1. **Restraint Devices:** Mechanical tools used to restrict a subject's movement and facilitate searching; such as, handcuffs, flex cuffs, leg irons, belly chains, hobble, optional nylon restraining device, etc.

**OFFICE OF THE SHERIFF**               **#104.00**
**MARTIN COUNTY, FLORIDA**          **PAGE 5 OF 6**

2. **Transporters:** Techniques used to control and/or move a subject from point A to point B with minimum effort by the deputy in order to gain and retain control over the subject.

3. **Take Downs:** Techniques that redirect, in a controlled manner, a subject to the ground in order to limit his/her physical resistance and to facilitate the application of a restraint device.

4. **Pain Compliance:** Techniques that force a subject to comply with a deputy as a result of the deputy inflicting controlled pain upon specific points in the subject's body, such as pressure point techniques.

5. **Counter Moves:** Techniques that impede a subject's movement toward an officer or others; such as, blocking, striking, distracting, kicking, parrying, dodging, weaving, redirecting, or avoiding, followed by appropriate controlling techniques.

6. **Oleoresin Capsicum Spray (OC):** Technique employing use of OC spray to gain control of subject(s). (**See Deployment of Oleoresin Capsicum procedure #302.05**).

D. **Level IV** - Intermediate Weapons

Weapons that are primarily used to control a subject, such as a baton.

E. **Level V** - Incapacitating Control

Techniques that are intended to stun or render a subject temporarily unconscious or unable to continue to resist. These techniques may be delivered with or without an impact weapon, such as a strike to a major nerve area. They may have moderate potential for physical harm.

F. **Level VI** - Deadly Force

Techniques that may result in death, great bodily harm or permanent disfigurement, such as impact weapon strikes to head, or use of firearms (taught for use only in circumstances requiring deadly force). Deadly Force

OFFICE OF THE SHERIFF                    #104.00
MARTIN COUNTY, FLORIDA              PAGE 6 OF 6

techniques are a last resort. Deputies shall follow the guidelines outlined in the Martin County Sheriff's Office Use of Deadly Force policy statement #103.00.

**VIII. NON-DEADLY FORCE PROHIBITED:**

A.  Deputies shall not use any type of choke holds or head locks, when possible, except situations where deadly force is justified.

B.  Impact weapons will not be used to put pressure against the pressure points of the head and face, except situations where deadly force is justified.

**IX. EXCESSIVE FORCE:** Sheriff's Office personnel will not use excessive force to effect an arrest or to control a prisoner or other person.

A.  A deputy will not mistreat persons who are in custody. A deputy will handle such persons in accordance with established Office procedures.

B.  A deputy will not strike or use physical force on a prisoner or other person except when necessary to prevent an escape, in self defense or to prevent violence to another person.

**X.  LESS LETHAL WEAPONS TRAINING:** In-service training for less lethal weapons shall occur at least biennially.

**XI. REPORTING USE OF NON-DEADLY FORCE:** Whenever a deputy uses any of the non-lethal weapons and/or physical force as part of a control of a persons actions, the Deputy involved shall immediately notify a supervisor and shall complete a written report on the incident which shall be submitted prior to leaving duty. (**See S.O.P. 300.01**) If the incident occurs off-duty, the deputy shall be considered on-duty until the report is completed.

Drafted By: mld # 22
Date: 02-24-93

_____
**Sheriff Robert L. Crowder**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  04-14296-CIV-GRAHAM
Magistrate Judge Lynch

GLENN TUHEY,

      Plaintiff,

v.

ROBERT CROWDER, as Sheriff
of Martin County, Florida, JAMES
WARREN, JAMES SANDERS,
CARLO SCIANDRA, WILLIAM
WEISS, and ANTHONY BIASELLA,

      Defendants.

_____/

## ORDER

      THIS MOTION is before the Court upon Defendant Sheriff's Motion for Summary Judgment as to Count II of Plaintiff's Complaint (and Memorandum of Law).  The Court has carefully reviewed said Motion and after due consideration, it is

      **ORDERED AND ADJUDGED** that the Defendant Sheriff's Motion for Summary Judgment as to Count II of Plaintiff's Complaint and the same is hereby _____

_____

_____

      **DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this ____ day of _____, 2005.

_____
HONORABLE DONALD L. GRAHAM
U.S. District Judge

Copies furnished:

Richard A. Giuffreda, Esq.; Richard K. Slinkman, Esq.; and Kenneth M. Gordon, Esq.